**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| CLIFFORD LEDFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:24-cv-188 (MTT) |
| ) | |
| EBARLE MARKETING SERVICES, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

Clifford Ledford has moved for default judgment against Ebarle Marketing Services, Inc. d/b/a American Solar Tec ("American Solar Tec"). Doc. 26. A hearing was held on January 6, 2025 to determine the extent of Mr. Ledford's damages. Doc. 28. For the following reasons, that motion (Doc. 28) is **GRANTED.**

### I. FINDINGS OF FACT

**A. Factual Background**

By virtue of its default, American Solar Tec has admitted the well-pleaded allegations of fact contained in the Complaint for Damages. *See, e.g., Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2019); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court finds that American Solar Tec's admissions and the evidence admitted at the January 6, 2025 hearing establish the following facts.

Mr. Ledford is a Georgia consumer who resides in Jackson, Georgia. Doc. 1-2 ¶ 8. Mr. Ledford is in his sixties and is quadriplegic. *Id.* ¶ 9. Mr. Ledford is on a fixed income; his sole source of income is benefits payments that he receives.

On or around June 1, 2021, Mr. Ledford was visited at his home by a solar salesperson named Don Totten. *Id.* ¶ 10. During this visit, Mr. Totten was acting on behalf of American Solar Tec and non-party USA Energy Savers, LLC ("USA Energy Savers"). *Id*. Mr. Totten spoke with Mr. Ledford at length regarding the benefits of purchasing a solar energy system from American Solar Tec and USA Energy Savers, including substantial power savings, financial benefits, and warranty coverage. *Id.* ¶ 11. Mr. Ledford was hesitant to move forward with purchasing a solar energy system given his financial situation but agreed to explore the possibilities of purchasing such a system. *Id.* ¶ 12.

Mr. Totten told Mr. Ledford that he was going to put together a sales proposal for him and needed access to his computer to do so. *Id.* ¶ 13. Unbeknownst to Mr. Ledford, rather than putting together a sales proposal, Mr. Totten was actually executing a purchase contract with USA Energy Savers and American Solar Tec and a loan agreement with Defendant Solar Mosaic LLC (hereinafter "Solar Mosaic"). *Id.* ¶ 13. The purported purchase contract reflected that Mr. Ledford would be purchasing the solar energy system for $38,874.00, and that various warranties would be provided to him. *Id.* ¶ 14.

Mr. Ledford became aware of the contracts that had been signed in his name the following day when he was contacted by Solar Mosaic regarding the purported loan agreement. *Id.* ¶ 16. Mr. Ledford promptly attempted to cancel both purported

contracts by calling Mr. Totten, who rejected the cancellation attempts. *Id.* ¶ 17. Mr. Ledford continued to attempt to cancel the contract in the weeks and months that followed, but the solar energy system was ultimately installed on his roof. Mr. Ledford was substantially hampered in his abilities to address these issues by his quadriplegia. *Id.* ¶¶ 18-20.

Mr. Ledford experienced substantial issues with the performance of the solar energy system. The solar energy system never performed as Mr. Totten had represented, and USA Energy Savers filed for bankruptcy in late 2022, which voided the extensive warranties that Mr. Ledford had been promised. Doc. 1-2 ¶ 25. Shortly after installation, Mr. Ledford began to experience roof leaks in close proximity to the penetrations that were made as part of the installation of the solar energy system. *Id.* ¶ 24. The problems that Mr. Ledford was experiencing with his roof got worse over time. *Id.* Mr. Ledford was forced to replace his roof at his own expense as a result of the damage stemming from the installation of the solar energy system. *Id.* ¶ 23. Mr. Ledford testified that he purchased the materials that were needed for the roof replacement from Home Depot for $12,000.00 and was forced to take out a loan to afford this purchase. Mr. Ledford paid Meritt Roofing $9,200.00 to replace the roof. Doc. 29-2. In total, Mr. Ledford spent $21,200.00 in relation to this roof replacement.

Mr. Ledford testified that he experienced substantial stress and inconvenience arising out of the fraud of American Solar Tec and Mr. Totten, and Mr. Ledford's finances were taxed as a result of the solar energy system payments that he was required to make and the roof replacement that was needed. Mr. Ledford sent

American Solar Tec a demand letter regarding the issues that he had experienced at least thirty days prior to filing his Complaint.  Doc. 1-1.

**B. Procedural History**

Mr. Ledford filed this lawsuit against American Solar Tec and Solar Mosaic in the Superior Court of Butts County on June 2, 2024.  Doc. 1-2.  Solar Mosaic removed the lawsuit to this Court on June 17, 2024.  Doc. 1.  American Solar Tec was served with this lawsuit on June 20, 2024.  Doc. 7.  American Solar Tec was required to answer or file a responsive pleading with this Court by July 11, 2024.

American Solar Tec failed to answer or file a responsive pleading with this Court as required by July 11, 2024.  Thus, Mr. Ledford applied to the Clerk for an entry of default against American Solar Tec on November 18, 2024.  Doc. 25.  The Clerk entered default against American Solar Tec the same day.  Mr. Ledford filed a motion for default judgment against American Solar Tec on December 11, 2024.  Doc. 26.  The Court held an evidentiary hearing on the motion for default judgment on January 6, 2025.  Doc. 28.

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court must enter a party's default if that party's failure to plead or otherwise defend an action against it "is shown by affidavit or otherwise."  After default has been entered, the Clerk may enter a default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation," as long as the party is not a minor or incompetent and has not made an appearance.  Fed. R. Civ. P. 55(b)(1).  In all other cases, the plaintiff must apply to the Court for a default judgment.  Fed. R. Civ. P. 55(b)(2).  The Court must hold an evidentiary hearing to determine damages unless all the essential

evidence is already in the record. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("We have held that no such hearing is required where all essential evidence is already of record."); *see also* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings[.]").

After the Clerk's entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations in the complaint. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] However, an entry of default against the defendant does not establish that the plaintiff is entitled to a default judgment. The defendant is not deemed to admit facts that are not well-pleaded or conclusions of law. *Id*. "The Court must consider whether the unchallenged facts constitute a legitimate cause of action, because the party in default does not admit a mere conclusion of law. In considering any default judgment, the Court must consider (1) jurisdiction, (2) liability, and (3) damages." *Johnson v. Rammage*, 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)). The defendant is also not deemed to admit the plaintiff's allegations relating to the amount of damages. *Patray v. Nw. Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]").

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

### III. JURISDICTION

To enter a valid default judgment, the Court must have both subject matter jurisdiction and personal jurisdiction. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." (alteration in original)).

First, the Court has subject matter jurisdiction over Mr. Ledford's claims based on diversity jurisdiction. 28 U.S.C. § 1332. Mr. Ledford is a resident of Butts County, Georgia and is, therefore, a citizen of Georgia for purposes of diversity jurisdiction. Doc. 1-2 at 4. American Solar Tec is a corporation organized under the laws of Florida, and its principal place of business is also in Florida. *Id.* ¶ 5. Thus, for purposes of diversity jurisdiction, American Solar Tec is a citizen of Florida. Mr. Ledford's alleged amount in controversy exceeds $75,000.

Second, the Court has personal jurisdiction over American Solar Tec. The complaint alleges that American Solar Tec is registered to do business in Georgia as a foreign profit corporation, that it committed the alleged tortious acts in Georgia, that it transacts business in Georgia, and that it owns real property in Georgia. Doc. 1-2 ¶ 4.

### IV. DISCUSSION

American Solar Tec is in default as a result of its failure to timely answer or file a responsive pleading with this Court as required. Mr. Ledford claims he has established

that American Solar Tec is liable for fraud, negligence[2], violations of the Georgia Fair Business Practices Act and the Georgia Unfair or Deceptive Practices Toward the Elderly Act, and attorneys' fees and costs.  Doc. 26.  The Court agrees.

## A. Fraud

In Georgia, the elements of fraud are: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Remax N. Atlanta v. Clark*, 537 S.E.2d 138, 141 (Ga. Ct. App. 2000).  "[A] party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Weinstock v. Novare Grp., Inc.*, 710 S.E.2d 150, 154 (Ga. Ct. App. 2011).

Mr. Ledford has established that Mr. Totten intentionally made a false representation that induced Mr. Ledford into giving Mr. Totten access to his computer.  Doc. 1-2 ¶ 13.  Mr. Ledford also established that he did not sign the purchase contract and did not otherwise indicate an intent to be bound by the purchase contract.  *Id.*  Thus, Mr. Ledford has established that American Solar Tec, through Mr. Totten, is liable for fraud.

Accordingly, the purported purchase contract with American Solar Tec is rescinded.

---

[2] Although Mr. Ledford establishes that American Solar Tec negligently installed the solar panels, he does not seek to recover under a negligence cause of action.  Rather, Mr. Ledford seeks to recover his actual damages for his roof repair under the Georgia Fair Business Practices Act.  This is appropriate because Mr. Ledford is only entitled to a single recovery for damage to his roof.

**B. The Georgia Fair Business Practices Act and the Georgia Unfair or Deceptive Practices Toward the Elderly Act.**

The Georgia Fair Business Practices Act ("GFBPA") outlaws "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." O.C.G.A. § 10-1-393(a). "A private [GFBPA] claim has three essential elements: a violation of the act, causation[,] and injury." *Regency Nissan v. Taylor*, 391 S.E.2d 467, 470 (Ga. Ct. App. 1990). "At least [thirty] days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to any prospective respondent." O.C.G.A. § 10-1-399(b). The GFBPA provides for an award of actual damages, which only requires "evidence of some actual injury." *See, e.g.*, *Small v. Savannah Int'l Motors, Inc.*, 619 S.E.2d 738, 743 (Ga. Ct. App. 2005); *Regency Nissan*, 391 S.E.2d at 472. Emotional distress damages are actual injuries that are recoverable for violations of the GFBPA. *See, e.g., Cross v. Equityexperts.org, LLC*, 2021 U.S. App. LEXIS 33623, at *21–22 (11th Cir. Nov. 12, 2021); *Zieve v. Hairston*, 598 S.E.2d 25, 32 (Ga. Ct. App. 2004); *Head v. Georgia P. R. Co.*, 7 S.E. 217, 218 (Sup. Ct. Ga. 1887).

Treble damages are mandatory under the GFBPA where the actions of a defendant in violation of the Act were intentional. O.C.G.A. § 10-1-399(c) ("Subject to subsection (b) of this Code section, a court shall award three times actual damages for an intentional violation."). Punitive damages under O.C.G.A. § 51-12-5.1 may also be awarded under the GFBPA where the actions of a defendant in violation of the Act were intentional. *Conseco Fin. Servicing Corp. v. Hill*, 556 S.E.2d 468, 473 (Ga. Ct. App. 2001) ("The [G]FBPA authorizes punitive damages in addition to mandating treble

damages for intentional violations."). "An 'intentional violation' occurs when the person committing the act or practice knew that his or her conduct was in violation of [the GFBPA]." O.C.G.A. § 10-1-392(b). "The intentional violation as contemplated by the [G]FBPA is a volitional act constituting an unfair or deceptive act or practice conjoined with culpable knowledge of the nature (but not necessarily the illegality) of the act." *Colonial Lincoln-Mercury Sales, Inc. v. Molina*, 262 S.E.2d 820, 823–24 (Ga. Ct. App. 1979).

Violations of the GFBPA are per se violations of the Georgia Unfair or Deceptive Practices Toward the Elderly Act (hereinafter "UDPTEA"). O.C.G.A. § 10-1-851. The UDPTEA provides additional protections from unfair practices for elderly and/or disabled persons, including a civil penalty of up to $10,000.00, as well as actual damages and punitive damages (if appropriate). O.C.G.A. § 10-1-851. Mr. Ledford is a "disabled person" within the meaning of the UDPTEA by virtue of his quadriplegia. O.C.G.A. § 10-1-851 provides the following factors for courts considering whether to impose a civil penalty:

1. Whether the defendant's conduct was in disregard of the rights of the elder or disabled persons;
2. Whether the defendant knew or should have known that the defendant's conduct was directed to an elder person or disabled person;
3. Whether the elder or disabled person was more vulnerable to the defendant's conduct because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability than other persons and whether the elder or disabled person actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct;
4. Whether the defendant's conduct caused an elder or disabled person to suffer any of the following:
    a. Mental or emotional anguish;
    b. Loss of or encumbrance upon a primary residence of the elder or disabled person;

      c. Loss of or encumbrance upon the elder or disabled person's principal employment or principal source of income;
      d. Loss of funds received under a pension or retirement plan or a government benefits program;
      e. Loss of property set aside for retirement or for personal or family care and maintenance; or
      f. Loss of assets essential to the health and welfare of the elder or disabled person; or
   5. Any other factors the court deems appropriate.

O.C.G.A. § 10-1-852.

American Solar Tec violated the GFBPA and the UDPTEA by signing a purchase and financing contract in Mr. Ledford's name without his knowledge or consent, making false and misleading representations to him regarding the solar energy system and its benefits, and refusing to allow him to cancel such contracts despite his right to do so under the Federal Trade Commission's door-to-door sales regulations.  Doc. 1-2 ¶¶ 13-20.  As a result of American Solar Tec's violations of the GFBPA and the UDPTEA, Mr. Ledford was purportedly bound to a fraudulently induced contract and ultimately had a solar energy system installed on his roof that caused substantial damage to it.  *Id.* ¶¶ 20-24.  Mr. Ledford was forced to spend $21,200.00 to have his roof replaced as a result of these actions and suffered substantial stress and inconvenience related to the situation.  Docs. 1-2 ¶ 23; 29-2.  Mr. Ledford sent American Solar Tec pre-suit notice as required by the GFBPA and otherwise established a violation of the GFBPA and the UDPTEA.

As a result of American Solar Tec's violations of the GFBPA and the UDPTEA, Mr. Ledford is entitled to recover $21,200.00[3] for the necessary roof repairs.  Mr.

---

[3] In his proposed order, Mr. Ledford requests emotional distress damages.  But he did not plead that he is entitled to emotional distress damages and he has alleged no basis for the emotional distress damages he seeks.  Doc. 1-2.  He has, therefore, failed to establish that he is entitled to damages for emotional distress.

Ledford has established that American Solar Tec's actions in violation of the GFBPA were intentional. As such, Mr. Ledford's is entitled to have his actual damages trebled to $63,300.00.

Mr. Ledford has shown by clear and convincing evidence that American Solar Tec's actions in violation of the GFBPA and the UDPTEA demonstrated willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences. As such, punitive damages under O.C.G.A. § 51-12-5.1 are warranted to punish, penalize, and deter American Solar Tec. In light of the egregious nature of American Solar Tec's actions and the specific vulnerabilities of Mr. Ledford, a punitive damages award of $21,200.00, an amount equal to his actual damages, is necessary to punish, penalize, and deter American Solar Tec.

By virtue of American Solar Tec's violation of the UDPTEA, Mr. Ledford is also entitled to a civil penalty of $10,000.00. American Solar Tec's conduct was in disregard to the rights of a disabled person, was targeted at a person who American Solar Tec knew or should have known was disabled, and resulted in actual economic damage to Mr. Ledford.

**C. Attorneys' Fees and Costs.**

Mr. Ledford is entitled to recover his reasonable attorneys' fees and costs pursuant to the GFBPA, the UDPTEA, and O.C.G.A. § 13-6-11.

Mr. Ledford presented evidence regarding the attorneys' fees that he incurred in relation to this lawsuit, as well as the rates that his counsel routinely charges in cases like his. Doc. 29-4. The Court finds that the rates that Mr. Ledford's counsel charges

and the time spent by his counsel in pursuit of his claims against American Solar Tec are both reasonable and necessary. Accordingly, Mr. Ledford is entitled to recover $4,717.00 for his attorneys' fees.

Mr. Ledford presented evidence regarding the costs that he incurred in relation to this lawsuit and showed that $406.08 of his total costs were attributable to American Solar Tec. Doc. 29-3. The Court finds that such costs are both reasonable and necessary. Accordingly, Mr. Ledford is entitled to recover $406.08 for his reasonable and necessary costs.

## V. CONCLUSION

Ledford's motion for default judgment against Ebarle Marketing Services, Inc. d/b/a American Solar Tec (Doc. 26) is **GRANTED**. Accordingly, Ledford is entitled to the following:

1. The purchase contract with American Solar Tec is hereby rescinded.
2. Mr. Ledford is entitled to recover treble of his actual damages, which totals $63,600.00.
3. Mr. Ledford is entitled to punitive damages of $21,200.00.
4. Mr. Ledford is entitled to a civil penalty of $10,000.00 under UDPTEA.
5. Mr. Ledford is entitled to recover attorneys' fees of $4,717.00.
6. Mr. Ledford is entitled to recover costs of $406.08.

**SO ORDERED**, this 4th day of March, 2025.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT